# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Mark Filip | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8319 | **DATE** | 5/26/2004 |
| **CASE TITLE** | JOHN NAPIER vs. MARK BRUCE, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due ___ ___.
(3) ☐ Answer brief to motion due ___ ___. Reply to answer brief due ___.
(4) ☐ Ruling/Hearing on ___ ___ set for ___ at ___.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ___ ___ set for ___ at ___.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ___ ___ set for ___ at ___ ___.
(7) ☐ Trial[set for/re-set for] on ___ ___ at ___.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ___ at ___.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER. Plaintiff is given to and including 6/8/04 in which to address why the two federal law claims should not be dismissed with prejudice so that Plaintiff may promptly proceed, if he chooses, on his remaining theories in state court, as Seventh Circuit precedent prescribes, as explained in attached Memorandum Opinion and Order. Status hearing date of 6/2/04 to stand.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAY 27 2004 date docketed | |
| ✓ | Docketing to mail notices. | | | 42 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | 2004 MAY 26 AM 10:03 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHN NAPIER, )
)
Plaintiff, )
)
v. )
) Case No. 02 C 8319
MARK BRUCE, ROSEMARY BRUCE, )
MAX STEVENS, TIM WALDUSKY, AL ) Judge Mark Filip
PIETRANGELO, MJM-PC SOLUTIONS, )
INC. d/b/a VICOM, VICODE, INC., )
HYPERVELOCITY, INC., VIRTUAL )
INTERNET COMMUNICATIONS, INC. )
d/b/a VICOM, and MPACT DEVELOPMENT )
LLC, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff's original complaint asserted one count under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"), one count under the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. 240.10b-5 ("10b-5" or "Section 10(b)"), and seven counts under state common law. On May 19, 2003, Defendants Mark Bruce, Rosemary Bruce, Tim Waldusky, and Al Petrangelo moved to dismiss all of the claims asserted against them and Defendant Max Stevens moved under Federal Rule of Civil Procedure 12(e) for a more definite statement.[1] With regard to the RICO and 10b-5 claims, the moving Defendants argued that the circumstances of fraud were not pled with sufficient

---

[1] After the original complaint was filed, default orders were entered against Defendants MJM-PC Solutions, Inc. d/b/a Vicom, Vicode, Inc., Hypervelocity, Inc., and Virtual Internet Communications, Inc. d/b/a Vicom and these defendants have not subsequently appeared in the case.

particularity. (D.E. 21, ¶¶ 7-8, 15-16; D.E. 22, at 1-3, 5-6; D.E. 23, at 1-3, 6-7; D.E. 25, at 1-3, 6-7.) Several of the Defendants also pointed out that Plaintiff's claim that he was fraudulently induced to purchase shares in June and December 1999 could not be actionable as to them because they were not alleged to have had interactions or dealings with Plaintiff until months or years *after* Plaintiff acquired the securities in question. (D.E. 22, at 2-3; D.E. 23, at 2-3; D.E. 25, at 2-3.) Judge Leinenweber considered the Defendants' arguments sufficiently compelling that, on September 9, 2003, he summarily dismissed the complaint in a single-paragraph minute order.

Plaintiff filed his first amended complaint on September 16, 2003. The amended complaint sets forth one count under RICO against all Defendants, one count under Section 10(b) against Defendants Stevens and Mark Bruce only, and eleven counts under state statutes and common law variously against some or all Defendants. However, in terms of addressing the lack of specificity in the RICO and 10b-5 fraud claims that led to the dismissal of the original complaint, the amended complaint does nothing more than identify Stevens as the maker of a single alleged misrepresentation and add an allegation that Mark Bruce made a misrepresentation in February 2002, at least eleven months after Plaintiff acquired his last securities.[2]

Defendant Stevens has filed a motion to dismiss all claims asserted against him. While the other Defendants served with the amended complaint, Mark and Rosemary Bruce, Waldusky, and Pietrangelo, have not filed a separate motion to dismiss,[3] the record is unclear as to whether

---

[2] As explained below in footnote 9, although the only share purchase dates expressly alleged in the amended complaint are in 1999, the Court is assuming *arguendo* that Plaintiff made an investment decision in relation to his acquisition of shares in March 2001.

[3] Defendant MPACT Development LLC was added as a defendant in the amended complaint but, like the Defendants who defaulted on the original complaint, has not appeared in the case. The amended complaint was served only on "counsel of record." (D.E. 30 at 1.)

2

they intended, through an oral motion made by their attorney, to join Stevens's motion to dismiss.[4] As explained below, this Court finds that the RICO count—which appears to be based on the same factual allegations concerning all Defendants—should be dismissed because, among other reasons, Plaintiff's averments are patently defective in that he has not properly alleged any RICO predicate acts or properly alleged and defined any RICO enterprise. This Court also finds that the 10b-5 count should be dismissed because the circumstances of alleged fraud have not been pled with sufficient particularity. (As explained further below, the securities fraud count also is deficient for multiple reasons under federal securities law precedent). Put differently, nothing in the amended complaint cures the deficiencies that earlier prompted Judge Leinenweber to summarily dismiss these counts in September 2003.

At this time, the Court intends to dismiss the federal claims for failure to state a claim and also intends—as Seventh Circuit precedent directs, *see, e.g., Grace v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999)—to dismiss all pendent state claims without prejudice so that they can be reasserted in state court, if Plaintiff so chooses. However, in light of, among other things, the lack of clarity regarding the intent of some of the Defendants to join in Stevens's motion to dismiss and the fact that the Court has further elaborated on certain deficiencies in the pleading

---

[4]Plaintiff's response to Defendant Stevens' motion to dismiss states that

> on October 23, 2003, Defendant Max Stevens presented his motion to dismiss Plaintiff's First Amended Complaint. Counsel for the remaining individual defendants stated that he intended on joining Defendant Stevens' motion, and was given leave by the Court to file a separate motion by November 6, 2003. To Plaintiff's counsel's knowledge, no such pleading was filed or served, and thus Plaintiff only responds to Defendant Steven's motion.

(D.E. 34 at 1).

3

that likely prompted Judge Leinenweber's prior summary dismissal, the Court will not dismiss the amended complaint without giving Plaintiff the opportunity to challenge the propriety of such dismissal. Accordingly, the Plaintiff has fourteen days to respond to this memorandum opinion and order. In particular, Plaintiff is invited to file a brief regarding why the pending federal law claims in the amended complaint should not be dismissed with prejudice for the reasons identified herein, such that Plaintiff will be able to pursue his state law claims in state court, if he so chooses. *See, e.g., Kennedy v. Schoenberg, Fisher & Newman Ltd.*, 140 F.3d 716, 728 (7th Cir. 1998).

## BACKGROUND FACTS[5]

On or about June 5, 1999, Plaintiff purchased twenty percent of the shares in MJM-PC Solutions, Inc. ("MJM"), an information technology consulting services company, "in exchange for paid-in capital in the form of ten thousand dollars ($10,000.00) in computer equipment and the transfer of existing accounts." (D.E. 30, ¶ 15.) Defendant Stevens, in his capacity as CEO of MJM-PC Solutions, Inc., signed the stock purchase agreement. According to Plaintiff, "[j]ust prior to entering into this agreement, Defendant Max Stevens showed Plaintiff Napier the financial statements of MJM-PC Solutions, Inc., which showed all accounts current and paid." (*Id.*) However, "[i]n December 1999, Plaintiff Napier became aware of eighty-seven thousand dollars ($87,000.00) in back taxes owed by MJM-PC Solutions, Inc." (*Id.*, ¶ 17.) On or about December 30, 1999, Plaintiff entered into a promissory note with MJM, under the terms of which, *inter alia*, Plaintiff loaned MJM $87,000 "for the payment of back taxes," and Plaintiff's

---

[5] The background facts are taken from Plaintiff's amended complaint and are assumed to be true, as the law requires, for present purposes. The Court takes no position concerning whether any of the allegations are actually well founded.

4

ownership interest in MJM increased to 33%. (*Id.*, ¶ 18.)

In or about May 2000, Mark Bruce joined MJM (which was by then doing business as "Vicom"), replaced Stevens as CEO, and received 20% equity in the company, thereby reducing Plaintiff's ownership interest to 25%. (*Id.*, ¶ 21.) On or about May 24, 2000, Plaintiff entered an employment contract with MJM to serve as Vice President of Sales and Marketing. (*Id.*, ¶ 20.)

Plaintiff further alleges that, "[i]n or about February 2001, Defendant Mark Bruce completed a 'reverse merger' of MJM-PC Solutions, Inc. d/b/a Vicom with a 'public shell' company, which resulted in a change of the company's name to Virtual Internet Communications, Inc. d/b/a Vicom." (*Id.*, ¶ 24.) Mark Bruce became President of the company with Stevens as Vice President. (*Id.*) As a result of the reverse merger, Plaintiff's ownership interest was reduced to 20%. (*Id.*) Plaintiff alleges that there was no shareholder approval of the reverse merger, and that he "was never provided with any notice of any meeting at which said reverse merger would be discussed or voted on. Napier never approved said reverse merger or the reduction in his ownership interest of the company resulting therefrom." (*Id.*, ¶ 25.)

On July 13, 2001, Defendants Mark Bruce and Tim Waldusky incorporated a company known as Vicode, Inc. ("Vicode"). (*Id.*, ¶ 28.) Plaintiff alleges that "Defendants Mark Bruce and Tim Waldusky formed Vicode to establish credit, and processed all [MJM] accounts receivable, paychecks and drafts through Vicode." (*Id.*) "In December 2001, [letters] were sent to clients and vendors advising that MJM-PC Solutions, Inc. had changed its name to Vicode, Inc., but that there . . . [were] no other changes, including no changes in ownership. These letters were signed by Defendants Max Stevens and Mark Bruce." (*Id.*, ¶ 33.)

Plaintiff further alleges that, "[o]n January 16, 2002, Defendant Mark Bruce informed

5

Plaintiff Napier that the company . . . [would] no longer pay him current wages or any back pay."
(*Id.*, ¶ 34.) MJM (the company in which Plaintiff holds stock, a/k/a "Virtual Internet
Communications, Inc." and "Vicom") was dissolved on or about January 31, 2002. (*Id.*, ¶ 37.)
"In February 2002, Defendant Mark Bruce represented to Plaintiff that ownership and debts of
[MJM] would be transferred to Hypervelocity, Inc." (*Id.*, ¶ 42.) However, it appears that
Plaintiff did not receive an ownership interest in Hypervelocity, Inc.

On March 13, 2002, Vicode (which the business of MJM was apparently run through
after some point in 2001) was dissolved and its accounts and assets were transferred to
Hypervelocity, Inc. (*Id.*, ¶ 41.) "[I]n April or May 2002, all accounts and assets of Hypervelocity,
Inc. were transferred to Defendant MPACT Development LLC, which operated out of the same
offices as Hypervelocity, Inc. and Vicode before it." (*Id.*, ¶ 43.)

To recap, Plaintiff now owns worthless stock in a dissolved corporation, MJM (a/k/a
"Virtual Internet Communications, Inc." and "Vicom.") Vicode, the company that the business
of MJM was apparently run through, also dissolved and transferred its assets to Hypervelocity,
which then transferred those assets to MPACT Development LLC. In addition to allegedly
losing the value of his stock, Plaintiff claims that he has been harmed because MJM never repaid
either the $87,000 loan or other loans which total approximately $50,000. Further, Plaintiff is
also seeking, *inter alia*, to recover amounts he is allegedly owed under his employment
agreement with MJM.

Count IX asserts a claim against all Defendants under RICO. Count I is brought against
Defendants Stevens and Mark Bruce under Section 10(b). The other eleven counts, Counts II-
VIII and X-XIII, seek relief variously against Defendants under state statutes and common law.

## LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted." *Johnson v. Rivera*, 272 F.3d 519, 520-21 (7th Cir. 2001). In ruling on the motion, the Court accepts as true all well-pleaded facts alleged in the amended complaint and draws all reasonable inferences from those facts in favor of Plaintiff. *See, e.g., Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977-78 (7th Cir. 1999). Dismissal for failure to state a claim is not appropriate unless "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## DISCUSSION

### A. The RICO Claim

Plaintiff's amended complaint does not identify the subsection of 18 U.S.C. § 1962 that forms the basis of his RICO claim. In his response to the motion to dismiss, Plaintiff asserts that he "has sufficiently alleged a RICO violation under Section 1962(c)." (D.E. 34 at 4.) The Court respectfully disagrees.

To state a viable cause of action under § 1962(c), "a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998) (internal quotations omitted). Plaintiff has not even attempted to identify an enterprise. Indeed, that term does not appear in either the amended complaint or Plaintiff's response to the motion to dismiss. Failure to properly identify and define the purported RICO enterprise alone justifies dismissal. *See, e.g., Stachon v. United Consumers*

*Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000) ("'[A] RICO complaint must identify the enterprise.'") (quoting *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995)).

In addition, and independently, the RICO count should be dismissed because Plaintiff has not properly alleged any predicate acts of racketeering activity. The only supposed "racketeering activity" identified by Plaintiff is that "Defendants conspired to commit fraud through, *inter alia*, creating shell companies for the sole purpose of establishing credit and accumulating debt, and then transferring the assets of said companies to new companies." (D.E. 30, ¶¶ 82- 83.) In fact, Plaintiff contends that his "First Amended Complaint complies with the elements of Section 1962(c) by stating that the Defendants 'conspired to commit fraud through, *inter alia*, creating shell companies for the sole purpose of establishing credit and accumulating debt, and then transferring the assets of said companies to new companies.'" (D.E. 34 at 4 (quoting D.E. 30, ¶ 82.)) However, under the RICO statute, "[o]nly violations of particular federal fraud statutes, specifically wire and mail fraud, constitute predicate acts [of racketeering activity]." *Chambers v. Holsten Mgmt. Corp.*, No. 02-5154, 2004 WL 723655, at *3 (N.D. Ill. March 25, 2004) (Gettleman, J.) (citing 18 U.S.C. § 1961(1)).[6] Furthermore, "Rule 9(b) applies to allegations of mail and wire fraud and by extension to RICO claims that rest on predicate acts of mail and wire fraud." *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (7th Cir. 1994) (collecting cases). Therefore, to base a RICO claim on predicate acts of mail or wire fraud, a plaintiff must state "the identity of the person who made the misrepresentation, the time, place and content of the

---

[6]Violations of other criminal fraud statutes, such as 18 U.S.C. § 1028 (relating to fraud and related activity in connection with identification documents), and 18 U.S.C. § 1546 (relating to fraud and misuse of visas, permits, and other documents), also constitute racketeering activity, but such violations are clearly not relevant to this case. *See* 18 U.S.C. § 1961(1).

8

misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Id.* (internal quotations omitted). Inasmuch as Plaintiff has not made any such allegations of mail or wire fraud or alleged any other racketeering activity as defined by the RICO statute, he has failed to state a claim under 18 U.S.C. § 1962(c), even after having been given an opportunity to amend his complaint after Judge Leinenweber's earlier summary dismissal.[7]

Because Plaintiff's RICO claim is based on the same allegations for all Defendants, it is evident that Plaintiff has failed to state a RICO claim against any of the Defendants. Therefore, although it is unclear whether Defendants Mark and Rosemary Bruce, Pietrangelo and Waldusky intended to join Stevens's motion to dismiss, the same reasons that likely prompted Judge Leinenweber's prior summary dismissal of the RICO allegations, along with the reasons explained in greater detail herein, in any event justify dismissal of this count as to all Defendants. *See, e.g., Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) ("*Sua sponte* 12(b)(6) dismissals are permitted, provided that a sufficient basis for the court's action is evident from the plaintiff's pleading."); *Apostol v. Landau*, 957 F.2d 339, 342-43 (7th Cir. 1992) (same); *766347 Ontario Ltd. v. Zurich Capital Markets, Inc.*, 274 F. Supp. 2d 926, 937 (N.D. Ill. 2003) (St. Eve, J.) (*sua sponte* dismissing defendants pursuant to Fed. R. Civ. P. 12(b)(6)); *James v. City of Chicago*, No. 02-7703, 2003 WL 21673953, at *5 (N.D. Ill. July 16, 2003) (Leinenweber, J.) (notifying plaintiff of intent to dismiss claim *sua sponte* under Fed. R. Civ. P. 12(b)(6) and allowing

---

[7] Notably, even if Plaintiff had sufficiently alleged securities fraud (which, as explained below, he has not), such fraud could not serve as predicate acts for a RICO claim because the Private Securities Litigation Reform Act of 1995, 18 U.S.C. § 1964(c), "deleted securities frauds from the list of 'racketeering' activities that trigger the application of RICO." *Fujisawa Pharm. Co., Ltd. v. Kapoor*, 115 F.3d 1332, 1337-38 (7th Cir. 1997).

9

plaintiff fourteen days in which to respond); *Smith v. Check Into Cash of Ill., LLC*, No. 99-1838, 1999 WL 1100939, at * 2 (N.D. Ill. Dec. 2, 1999) (Moran, J.) (notifying plaintiff of intent to dismiss suit under Fed. R. Civ. P. 12(b)(6) *sua sponte* and giving plaintiff fourteen days in which to respond); *Lembach v. State of Indiana*, 987 F. Supp. 1095, 1098 n.3 (N.D. Ind. 1997) (Lee, C.J.) ("Notwithstanding the fact that the State has not appeared in this case, the court must *sua sponte* dismiss Lembach's claims against the State for the same reasons that his claims against the IDOC must be dismissed."). As noted above, however, the Court is not dismissing the RICO count at this time but is instead providing Plaintiff fourteen days to respond to this memorandum and opinion and to explain why the RICO count should not be dismissed as to all Defendants.

B.  The 10b-5 Claim

Seventh Circuit precedent teaches that, "[t]o state a valid Rule 10b-5 claim, a plaintiff must allege that the defendant (1) made a misstatement or omission, (2) of material fact, (3) with scienter, (4) in connection with the purchase or sale of securities, (5) upon which the plaintiff relied, and (6) that reliance proximately caused plaintiff's injuries." *In re Healthcare Compare Corp. Securities Litig.*, 75 F.3d 276, 281 (7th Cir. 1996). Defendant contends that Plaintiff has failed to plead his securities fraud claim with sufficient particularity. The Court agrees.

In securities fraud cases, Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") requires that the Plaintiff plead "'the who, what, when, where, and how'" concerning the alleged fraud. *Id.* at 281 (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990)). In addition, the Private Securities Litigation Reform Act of 1995 ("PSLRA") requires that a plaintiff alleging a 10b-5 claim "specify each statement alleged to have been misleading," and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). The PSLRA further provides in

10

relevant part that, as to each misstatement or omission, the complaint must "state with particularity the facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* at § 78u-4(b)(2). Scienter, the required state of mind for 10b-5 claims, is defined as "the intent to deceive, manipulate or defraud," *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 (1976), or the "reckless disregard of the truth" of the matter asserted. *S.E.C. v. Jakubowski*, 150 F.3d 675, 681 (7th Cir. 1998).

As the basis of his 10b-5 claim, Plaintiff has identified the following four alleged misrepresentations, quoted verbatim below:

a. Just prior to March 5, 1999, Defendant Max Stevens represented to Plaintiff that all accounts payable of MJM-PC Solutions, Inc. were paid and current, when actually the company owed back taxes;

b. That MJM-PC Solutions, Inc., Vicom, Vicode, Hypervelocity, Inc., and Virtual Internet Communications, Inc. were fully registered companies;

c. That Plaintiff Napier's shares would not be diluted and/or devalued when the companies' names were changed and/or merger [sic] (e.g. MJM-PC Solutions, Inc. to Virtual Internet Communications, Inc.); and,

d. In February 2002, Defendant Mark Bruce informed Plaintiff that all debts and ownership of Vicom would be transferred to Hypervelocity, Inc.

(D.E. 30, ¶ 53.) Paragraph 53(a), the first of the four alleged misrepresentations, taken in conjunction with paragraph 15 of the amended complaint—which states in relevant part that "Defendant Max Stevens showed Plaintiff Napier the financial statements of MJM-PC Solutions, Inc., which showed all accounts current and paid"—satisfies the "who, what, when, where, and how" requirements of Rule 9(b). However, with respect to all of the alleged misrepresentations, including this one, Plaintiff has not met PSLRA's requirement that specific facts be alleged giving rise to a strong inference of scienter.

11

The only allegations in the amended complaint which directly address scienter are conclusory and stated about "Defendants" generally, such as, most specifically, the allegation that "Defendants made the Misrepresentations to Plaintiff Napier knowingly and with the intent to induce Plaintiff Napier to purchase the Shares." (*Id.*, ¶ 54.) These allegations are inadequate as a threshold matter because group pleading allegations do not suffice under the PSLRA to establish scienter on the part of each individual Defendant. *See, e.g., Chu v. Sabratek Corp.*, 100 F. Supp. 2d 827, 837 (N.D. Ill. 2000) (Castillo, J.).[8] In addition, and independently, these allegations are also insufficient because they are merely conclusions. *See Premier Capital Mgmt., LLC v. Cohen*, No. 02-5368, 2003 WL 21960357, at *5 (N.D. Ill. Aug. 15, 2003) (Gottschall, J.) ("Conclusory allegations that defendants acted with knowledge that the representations were false and misleading do not satisfy the PSLRA's pleading requirements.").

Moreover, to the extent the amended complaint possibly otherwise offers some allegation of motive that might bear on the scienter issue, the amended complaint's allegation that the "Defendant Individuals have conspired to commit fraud upon individuals, such as Plaintiff Napier," so as to obtain "paid-in capital, equipment, and services" (*id.*, ¶ 48), is the type of boilerplate motive allegation that courts have routinely held inadequate under the heightened

---

[8] The majority (perhaps the vast majority) of federal courts interpreting the PSLRA have found that group pleading allegations are inadequate to establish the requisite scienter for each individual defendant. The Fifth Circuit recently so held in *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2004). The Fifth Circuit's holding is consistent with the holdings of many district courts that have reached the same conclusion. *See, e.g., In re Cross Media Mktg. Corp. Sec. Litig.*, No. 02-5462, 2004 WL 842350, at *6 (S.D.N.Y. April 20, 2004) (Patterson, J.); *D.E. & J. Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719, 742 (E.D. Mich. 2003) (Rosen, J.); *Johnson v. Tellabs, Inc.*, 262 F. Supp. 2d 937, 955 (N.D. Ill. 2003) (St. Eve., J.); *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 553 (D. Del. 2002) (Sleet, J.); *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 142 F. Supp. 2d 589, 618 (D. N.J. 2001) (Walls, J.); In re *Sunbeam Sec. Litig.*, 89 F. Supp. 2d 1326, 1341 (S.D. Fla. 1999) (Middlebrooks, J.).

pleading standards for federal securities fraud claims under the PSLRA. *See, e.g., Premier*, 2003 WL 21960357, at *5 (rejecting as insufficient under the PSLRA allegation that defendant officers committed fraud because of alleged "nee[d] to alleviate the corporation's extreme financial difficulties" prompted by misappropriation and squandering of company money, and defendants' desire to "loot the corporation for their personal gain"); *Chu v. Sabratek Corp.*, 100 F. Supp. 2d 827, 837 (N.D.Ill. 2000) (Castillo, J.) (rejecting as insufficient allegation that defendants committed fraud so as to enhance their respective "status as an officer or director" of company); *In re Allscripts, Inc. Secs. Litig.*, No. 00-6796, 2001 WL 743411, at *11 (Kocoras, J.); (rejecting as insufficient allegations that defendant officers committed fraud so as to capitalize on their "incentive-based" salaries and benefits packages and so as to inflate stock price to facilitate corporate acquisition); *accord, e.g., San Leadro Emergency Med. Group Profit Sharing Plan v. Phillip Morris Corp.*, 75 F.3d 801, 813-14 (2d Cir. 1996) (finding insufficient allegation that defendants committed fraud so as to "maximize the marketability of the $700 million of debt securities . . . and to minimize the interest rate on those securities"); *In re Cross Media Mktg. Corp. Sec. Litig.*, ___ F.Supp.2d ___, No. 02-5462, 2004 WL 842350 (S.D.N.Y. April 20, 2004) (Patterson, J.) (finding insufficient allegation that defendants committed fraud "to raise additional capital in private placement [offering]" and to "maintain compliance with financial covenants of a company loan agreement").

Furthermore, the Court notes that in a federal securities case, it has long been the rule in this circuit that a plaintiff may not simply allege "fraud by hindsight" or point to the "before" and the "after" concerning disclosures about a company to claim that defendants must have intended to commit fraud. *See DiLeo*, 901 F.2d at 628; *accord, e.g., Chu v. Sabratek Corp.*, 100 F. Supp.

13

2d 815, 824 (N.D. Ill. 2000) ("A company's overstatement of earnings, revenues, or assets in violation of GAAP does not itself establish scienter.") (citing *DiLeo*, 901 F.2d at 628); *Premier*, 2003 WL 21960357, at *7 ("[P]laintiffs may not rest a securities fraud claim on the differences between financial statements."). Thus, the alleged fact that Stevens, just before March 5, 1999, showed Plaintiff financial statements indicating that all accounts payable were current when the company apparently owed some amount of back taxes at that time (which totaled $87,000 by December 30, 1999) does not raise the requisite strong inference of scienter. *Accord, e.g., Premier*, 2003 WL 21960357, at *7 (holding that strong inference of scienter within the meaning of the PSLRA was not created by allegations that company's Vice President of Accounting and Control prepared financial statements relied upon by investors which showed tooling assets worth more than $4.25 million and total assets exceeding $5.3 million and then less than two months later, after plaintiffs' invested, prepared new financial statements showing only $1.5 million in tooling assets and just $4.3 million in total assets). Nor is Stevens position as CEO enough to raise a strong inference of scienter. *See Johnson v. Tellabs, Inc.*, 303 F. Supp. 2d 941, 967 (N.D. Ill. 2004) ("'Generalized imputations of knowledge do not suffice, regardless of the defendants' positions within the company.'") (quoting *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 539 (3d Cir. 1999)).

The alleged misrepresentations listed in subsections (b), (c), and (d) of paragraph 53 of the amended complaint fail for additional independent reasons. The allegations regarding the misrepresentations described in subsections (b) and (c) are inadequate because the identity of the person or persons making the representations is not stated. *See, e.g., Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 730 (7th Cir. 1998) ("Rule 9(b) is not satisfied where the complaint vaguely

14

attributes the alleged fraudulent statements to 'defendants.'") (internal quotation and citation omitted); *Tricontinental Indus. Ltd v. Anixter*, 215 F. Supp. 2d 942, 947 (N.D. Ill. 2002) (Bucklo, J.) (holding that alleged misstatements that were attributed to "'defendants' generally . . . [were] insufficient to satisfy the heightened pleading requirements of Rule 9(b).") (citing, *inter alia*, *Sears v. Liken*, 912 F.2d 889, 893 (7th Cir. 1990)); *Fidelity Nat'l Title Ins. Co. of New York v. Intercounty Nat'l Title Ins. Co.*, No. 00-5658, 2001 WL 477162, at *3 (N.D. Ill May 3, 2001) (Conlon, J.) ("'A complaint does not satisfy Rule 9(b) if it makes blanket allegations that fail to specifically identify the defendants who made each misrepresentation or omission.") (quoting *In re VMS Sec. Litig.*, 752 F. Supp. 1373, 1391 (N.D. Ill. 1990)). Nor are the alleged misstatements specifically attributed through any factual allegations that link them to either of the two named Defendants, such that a "group publication" concept might be in play. Relatedly, the alleged misrepresentations described in subsections (b) and (c) fail under Rule 9(b) because the amended complaint does not aver when they were made. *See Cook v. Exelon Corp.*, No. 01-7406, 2002 WL 31133274, at *5 (N.D. Ill. Sept. 26, 2002) (Kocoras, J.) ("Providing broad time ranges when misrepresentations were made is not sufficient to satisfy Rule 9(b)."); *see also Clark v. Robert W. Baird Co.*, 142 F. Supp. 2d 1065, 1072 (N.D. Ill. 2001) (Bucklo, J.) (stating that "it is not enough to merely allege a period of months or years, or the duration of the activity" to satisfy Rule 9(b)).

The failure to specify when the representations described in subsections (b) and (c) were made is particularly significant because it appears that at least some of those representations were made *after* Plaintiff purchased his securities. Representations made after a plaintiff purchases shares cannot form the basis of 10(b) claim that the plaintiff was fraudulently induced to purchase the shares. *See, e.g., Latigo Ventures v. Laventhol & Horwath*, 876 F.2d 1322, 1326

15

(7th Cir. 1989) ("The latter grievance is quite immaterial, because it postdates the plaintiffs' purchase of Xonics stock."); *see also LHLC Corp. v. Cluett, Peabody & Co., Inc.*, 842 F.2d 928, 932 (7th Cir. 1988) ("Deloitte's letter came too late to affect the closing; by the time LHLC received the letter, it had inspected the inventory itself and decided that $7.9 million was too high; any falsity in Deloitte's letter did no more than deprive LHLC of a bargaining chip in negotiations with Cluett or of evidence in a subsequent suit. This is not a *securities* problem.") (emphasis in original); *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992) ("A similar situation appears with reference to the 1983 year-end financial statement–this was issued after all of the partnerships had been closed and could not have been the basis for reliance in the purchase of securities."). According to the amended complaint, two of the entities referred to in subsections (b) and (c), Vicode and Hypervelocity, Inc., both apparently came into existence after March 2001, the last date on which Plaintiff acquired his shares.[9] (D.E. 30, ¶¶ 19, 24, 26, 28, 38.) Therefore, representations about transactions involving those companies or whether they were "fully registered" appear to have taken place after Plaintiff acquired his shares. Hence, for this additional reason, those representations are not actionable under Section 10(b).[10]

---

[9] The Court is assuming *arguendo* that Plaintiff made an investment decision concerning the exchange of his MJM shares for shares in Virtual Internet Communications in February/March 2001 despite the fact that it appears unlikely that Plaintiff could have relied on any representations regarding the MJM/Virtual Internet Communications merger because the amended complaint indicates that Plaintiff was not given notice of the merger and never approved it or the resulting exchange of his shares. (D.E. 30, ¶ 25). The only other share acquisitions alleged by Plaintiff took place on June 5, 1999 and December 30, 1999. (*Id.*, ¶¶ 15, 18.)

[10] Likewise, the alleged misrepresentation in paragraph 53(d) is inadequate not only because Plaintiff has not sufficiently plead scienter, but also independently because this representation is alleged to have occurred in February 2002, at least eleven months after Plaintiff acquired his last shares.

In addition, the Court notes that with regard to the "fully registered" representations relating to all of the entities identified in subsection (b), Plaintiff fails to meet PSLRA's requirement of pleading "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). Plaintiff does not explain what he means by "fully registered" or why this statement was untrue.[11] "Claiming that a particular statement was untrue is not enough—plaintiffs must explain, with particularity, the factual basis for their assertion that the statement was untrue." *Premier*, 2003 WL 21960357, at *2. Therefore, the allegations regarding the misrepresentations described in subsection (b) fail on this separate ground as well.

## CONCLUSION

For the foregoing reasons, the Court intends to dismiss Counts I and IX, the only federal claims, and also intends to dismiss all pendent state claims without prejudice so that they can be reasserted in state court, if Plaintiff so chooses. Because the Court has made certain determinations in this opinion notwithstanding the ambiguity concerning whether certain Defendants intended to join the motion to dismiss so as reassert their previously successful arguments, and because the Court has otherwise elaborated *sua sponte* on certain reasons that likely prompted Judge Leinenweber's prior summary dismissal of this case, Plaintiff is given fourteen days to respond. Plaintiff is respectfully requested to address why the two federal law claims should not be dismissed with prejudice so that Plaintiff may promptly proceed, if he chooses, on his remaining theories in state court, as Seventh Circuit precedent prescribes.

---

[11] With respect to one entity, Vicode, Plaintiff alleges that "Defendants operated Vicode without articles of incorporation or by laws." (D.E. 30, ¶ 29.) However, elsewhere in the amended complaint, Plaintiff describes Vicode as "an Illinois corporation." (D.E., ¶ 8.) It is unclear, and Plaintiff has not attempted to explain, how Vicode could be an Illinois corporation without articles of incorporation.

17

Mark Filip
United States District Judge
Northern District of Illinois

Enter: **MAY 2 6 2004**